IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

Vs.                                           No.  10-40013-02-SAC

EUSEBIO LOPEZ-ESTRADA,

        Defendant.

MEMORANDUM AND ORDER

The case comes before the court on the defendant's motion to suppress all items discovered and seized as the result of the traffic stop and subsequent search of the vehicle on January 19, 2010. (Dk. 21). The government has filed a response to the motion. (Dk. 24). The court heard evidence and arguments on May 12, 2010. After considering the same and researching the issues, the court files this order as its ruling on this motion.

**INDICTMENT**

The defendant is charged in a single-count indictment possession with the intent to distribute 500 grams or more of methamphetamine on January 19, 2010, in violation of 21 U.S.C. § 841(a)(1). (Dk. 1).

**MOTION TO SUPPRESS**

*Evidence at Suppression Hearing*

On January 19, 2010, at approximately 8:30 a.m., Kansas Highway Patrol Trooper Josiah Trinkle was on duty sitting in his marked patrol car in the median of Interstate 70, near milepost 224 in Ellsworth County, Kansas. He observed a white Ford flatbed truck traveling eastbound. Looking over his shoulder, he noticed that one end of the rear license plate on the truck was hanging lower than the other. Because Kansas law required registration plates to be securely attached, Trooper Trinkle began following the truck.

As he gained on the truck, he observed that the lower end of the license plate was not bolted to the truck but was hanging by string or wire. Trooper Trinkle testified his observation was significant because state law required registration plates to be "firmly attached, free from being able to swing." He then saw the brake lights on driver's side illuminate as the truck's speed slowed but the brake lights on the passenger side did not light up. Trooper Trinkle testified this was significant because state law requires two operational brake lights visible in natural sunlight from a distance of 300 feet. He estimated that he was between 200 to 300 feet away from truck when he saw only one of the brake lights illuminate. There

was nothing obscuring his vision of both brake lights. At this point, Trooper Trinkle decided to conduct a traffic stop for the registration plate violation and for the brake light violation. He activated his emergency lights and pulled the truck over.

On cross-examination, Trooper Trinkle also testified that the passenger-side brake light did not appear to work as the truck pulled over in response to the emergency lights. When he approached on foot, the trooper did not stop to examine closely the license plate. But just from walking past it, his impression was that the license plate was securely attached. The trooper also admitted that he never saw the license plate swinging at any point before or during the stop. The trooper, however, disputed that this was not a license display violation, for he had seen tags similarly wired "able to swing" on windy days.

Trooper Trinkle spoke with the driver and identified him from his California driver's license as the defendant. The trooper then explained the reason for the stop was that a brake light was out and that the license plate was attached with wire and hanging down on one end. According to Trooper Trinkle, the defendant acknowledged that he knew of the license plate missing a bolt and that he was aware of the brake light. During the

3

stop, the defendant did not contest Trinkle's reasons for the stop or suggest they were incorrect as to cause the trooper to investigate these reasons further.  Thus, Trooper Trinkle did not ask to check the operation of the brake lights during the traffic stop.  The trooper had no difficulty conversing with the defendant in English, and the defendant didn't appear to have questions about what the trooper was saying.

    The defendant testified that the trooper identified the license plate as the only reason for the stop.  The defendant denied telling the trooper that he knew the brake light was not working.  When asked if the brake light was working on the day of the stop, the defendant testified it was working just "five minutes before when . . . [he had] checked it."  The defendant also denied applying his brakes before the trooper activated his emergency lights for the traffic stop.  On cross-examination, the defendant admitted he could not see the brake lights while driving the truck.  The defendant used an interpreter at the hearing, but during his testimony, he spoke English in answering some of the questions put to him.

    Trooper Trinkle explained that the audio-video recording system for his car was not operating, as the camera had fallen from windshield and needed to be re-installed.  At the direction of his

4

supervising officer, Trooper Trinkle had turned off the entire system, including the audio element. Thus, there was no video or audio recording made of the traffic stop.

Having obtained the licenses and registration, Trooper Trinkle took the information back to his patrol car and requested computer checks on the driver and the passenger. He wrote out the warning ticket and walked back to the truck returning the licenses and documentation. After explaining the warning ticket, Trooper Trinkle told the men they were free to go and stepped away from the truck in the direction of his patrol car. Trooper Trinkle then stepped back toward the truck and received permission to ask a few more questions. Following this conversation, he received consent to search the truck during which he found a vehicle battery in the tool box. The insides of the battery had been altered to make a secret compartment which contained methamphetamine.

The defendant presented the testimony of Katherine Overley, a private investigator, who went to Ellsworth, Kansas, on March 11, 2010, with defense counsel to check out the truck that had been seized and stored following the traffic stop. Ms. Overley testified that she saw both brake lights on the truck operate and illuminate equally and that she did not

5

notice any visible damage to the lights or any instances of the brake lamps' flickering or not lighting up. A video was made of this check of the truck's brake lights and was admitted at the hearing. The court reviewed the video.

As pointed out by the government on the cross-examination of Ms. Overley, this check of the brake lights was made approximately two months after the traffic stop. At the close of the hearing, the court accepted the defendant's proffer that the individual who towed and stored the truck after the traffic stop would testify that he has had custody of the truck since the stop and that no repairs have been made on the truck while it has been in his custody. The government represented that it had no reason for disputing the defendant's proffer and no information indicating repairs were made to the impounded truck.

*Governing Law*

"The Supreme Court has said there are three types of police-citizen encounters." *United States v. Brown*, 496 F.3d 1070, 1074 (10th Cir. 2007). The first type is a consensual encounter that does not trigger protection under the Fourth Amendment, the second is an investigative detention that constitutes a "Fourth Amendment seizure[ ] of

6

limited scope and duration and must be supported by a reasonable suspicion of criminal activity," and the third type is an arrest that is "the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause." *Id.* (quotation and citation omitted).

Traffic stops are seizures subject to Fourth Amendment analysis. *United States v. Bradford*, 423 F.3d 1149, 1156 (10th Cir. 2005). Most analogous to investigative detentions, traffic stops are scrutinized for lawfulness under the two-prong analysis set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *Id.* The first prong addresses "whether the officer's action was justified at its inception." 392 U.S. at 20. The second prong is whether the detention "was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* The defendant's motion to suppress advances challenges limited to the first prong.

"A traffic stop is justified at its inception if an officer has . . . reasonable articulable suspicion that a particular motorist has violated any of the traffic or equipment regulations of the jurisdiction." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir.), *cert. denied*, --- U.S. ----, 129 S.Ct. 2881 (2009). "For an officer to have reasonable suspicion to seize an individual, the officer 'must have a particularized and objective basis for

7

suspecting the particular person stopped of criminal activity.'" *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (quoting *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000)). Reasonable suspicion is "something more than an inchoate and unparticularized suspicion or hunch." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotation marks omitted). A court "looks only at whether the stop was 'objectively justified'; the officer's subjective motives are irrelevant." *United States v. Chavez*, 534 F.3d 1338, 1344 (10th Cir. 2008), *cert. denied*, --- U.S. ----, 129 S.Ct. 953 (2009).

The defendant contends first that Trooper Trinkle had not observed an actual traffic violation before stopping the truck. The license plate was securely attached and not swinging, and both brake lights on the truck functioned properly. The law does not require the government to show that a traffic violation actually occurred but that an officer had reasonable suspicion to believe a violation had occurred or was occurring. The Tenth Circuit has plainly discussed this distinction:

> Reasonable suspicion is "a particularized and objective basis" for suspecting the person stopped of criminal activity. *United States v. Cortez*, 449 U.S. 411, 417-418 (1981). "A traffic stop based on an officer's incorrect but reasonable assessment of the facts does not violate the Fourth Amendment." *United States v. Chanthasouxat*, 342 F.3d 1271, 1276 (11th Cir. 2003) (citations omitted); *see also*

8

> *Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990). The Supreme Court in *Rodriguez* explained that in order to satisfy the reasonableness requirement of the Fourth Amendment, what is generally demanded of "the police officer conducting a search or seizure under one of the exceptions of the warrant requirement ... is not that they always be correct, but that they always be reasonable." *Rodriguez*, 497 U.S. at 185.
>
>> We have consistently held that an officer's mistake of fact, as distinguished from a mistake of law, may support probable cause or reasonable suspicion necessary to justify a traffic stop. [*United States v.*] *DeGasso*, 369 F.3d [1139] at 1144 [(10th Cir. 2004)] ; *see also United States v. Salinas-Cano*, 959 F.2d 861, 865 (10th Cir. 1992). But we have also held that failure to understand the law by the very person charged with enforcing it is not objectively reasonable. *See DeGasso*, 369 F.3d at 1144.

*United States v. Tibbetts*, 396 F.3d 1132, 1138 (10th Cir. 2005); *see also United States v. Valadez-Valadez*, 525 F.3d 987, 991-992 (10th Cir. 2008) ("An officer's reasonable mistake of fact, as distinguished from a mistake of law, may support the probable cause or reasonable suspicion necessary to justify a traffic stop," but "an officer's failure to understand the plain and unambiguous law he is charged with enforcing is not objectively reasonable." (internal quotation marks and citations omitted)).

The governing Kansas statute on the display of license plates requires in pertinent part:

> Every license plate shall at all times be securely fastened to the vehicle to which it is assigned so as to prevent the place from swinging, and at a height not less than 12 inches from the ground, measuring from the bottom of such place, in a place and position to

9

be clearly visible, and shall be maintained free from foreign materials and in a condition to be clearly legible.

K.S.A. 8-133. In *United States v. Velazquez*, 494 F. Supp. 2d 1250, 1251, (D. Kan. 2007), *aff'd*, 349 Fed. Appx. 339 (10th Cir. Oct. 16, 2009)*, cert. denied,* 78 USLW 3547 (Mar. 27, 2010), the district court considered whether an officer had reasonable suspicion when the front license plate was attached by only one bolt and "was slightly askew, at about a fifty-five degree angle." The court found:

> While there is no precedent defining "securely fastened" in this context, Trooper Rainieri had an objectively reasonable articulable suspicion that the defendant's tag was in violation of the statute. Defendant's front tag was secured by only the top left bolt and hanging askew. Because the tag was not horizontal to the vehicle, a police officer traveling at seventy miles per hour, in the opposite direction, could have reasonable suspicion that defendant's plate was not securely fastened to the vehicle. Requiring a tag to be securely fastened to the vehicle not only aids in identifying the vehicle, but also maintains the safety of the highways. Having reasonable suspicion that the tag was not securely fastened, in violation of K.S.A. § 8-133, Trooper Ranieri's stop of defendant was therefore valid.

494 F. Supp. 2d at 1252-53. License plates typically have at least one hole at each end of the top and/or the bottom of the plate. When a plate is not attached with bolts at both ends and one side is hanging lower than the other, there is reason to question whether the plate is so secured as to prevent swinging. The statute does not require the license plate to be seen

swinging for a violation. It is enough for reasonable suspicion that the officer believe the plate is attached in a manner that would not prevent it from swinging. Having seen the plate hanging lower on one end from the fact that it was wired and not bolted, Trooper Trinkle had reasonable suspicion to stop the truck based on his initial observations of the license plate being attached in a manner that did not prevent swinging.

Under Kansas law, a motor vehicle must "be equipped with two (2) or more stop lamps meeting the requirements of subsection (a) of K.S.A. 8-1721." K.S.A. § 8-1708(a). The relevant requirements of § 8-1721(a) are:

> Any vehicle . . . shall be equipped with a stop lamp or lamps on the rear of the vehicle which shall display a red or amber light, or any shade of color between red and amber, visible from a distance of not less than three hundred (300) feet to the rear in normal sunlight, and which shall be actuated upon application of the service or foot brake, and which may, but need not, be incorporated with any one (1) or more other rear lamps.

The credible testimony of Trooper Trinkle establishes that he had reasonable suspicion to stop the defendant for violating this statute on January 19, 2010. In weighing the credibility of this testimony, the court has considered the defendant's evidence that the brake lights were working almost two months later and that no one had made any repairs to the

11

seized truck following the stop. Even so, the record is not persuasive in showing that at the time of the stop Trooper Trinkle lacked reasonable suspicion and did not in good faith believe there was a brake light violation. He issued a warning ticket at the scene for both traffic violations. It is unnecessary for the court to proffer a reasonable explanation for why the brake lights could have failed in January but worked in March. It is enough if the court believes Trinkle made an objectively reasonable mistake in fact and so had reasonable suspicion of a traffic stop. *See United States v. Pena-Montes*, 589 F.3d 1048, 1052 (10th Cir. 2009). The court further believes the trooper discussed the brake light problem with the defendant as a reason for the stop, and based on the defendant's response, the trooper had no reason to question his conclusion about the brake lights. The court questions and even doubts the defendant's testimony that he had checked his brake lights just five minutes before this traffic stop occurred along a rural stretch of Interstate 70. In sum, the court believes Trooper Trinkle had reasonable suspicion to conduct a traffic stop for a brake light violation.

        The defendant's motion to suppress challenges only the initial stop as a violation of the Fourth Amendment. Based on the above findings

and holdings, the court denies the defendant's motion and declines to address the other issues typically analyzed in such traffic stops and discussed in the government's memorandum.

IT IS THEREFORE ORDERED that the defendant's motion to suppress (Dk. 21) is denied.

Dated this 25th day of May, 2010, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge